IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-96-RJ

PHILLIP HENNING,

   Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

   Defendant.

ORDER

This matter is before the court on Claimant's brief and Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). [DE-23, -25]. Claimant Phillip Henning ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and briefing submitted by the parties, Defendant's Motion is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on May 3, 2018, alleging disability beginning June 1, 2015, later amended to February 27, 2018. (R. 16, 224–27, 341). His claim was denied initially and upon reconsideration. (R. 16, 69–89). A hearing before the Administrative Law Judge ("ALJ") was held on May 4, 2021, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 16, 31–67). On May 19, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 13–30).

On December 14, 2021, the Appeals Council denied Claimant's request for review. (R. 5–10). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

Case 5:22-cv-00096-RJ   Document 27   Filed 09/26/23   Page 2 of 14

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ failed to make findings regarding Claimant's time off task and absences, and (2) the ALJ failed to give substantial weight to Claimant's disability rating from the Department of Veterans Affairs ("VA"). Pl.'s Mem. [DE-23] at 4–8.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity during the period of his amended alleged onset date, February 27, 2018, through his date of last insured, June 30, 2018. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease; depression; anxiety; and post-traumatic stress disorder. *Id.* The ALJ also found Claimant had nonsevere impairments of hypertension and substance use disorder. (R. 18–19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 20–21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

> [The claimant] could perform simple and routine tasks and could maintain attention, concentration, and persistence to perform such tasks at a nonproduction rate pace, meaning no assembly line-type or quota-based work. The claimant could occasionally interact with supervisors and coworkers and could only have incidental contact with the public. He could adapt to infrequent changes in work routine.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

(R. 21–25). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 22).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a sales engineer or administrative assistant. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25–26).

## V. DISCUSSION

### A. Claimant's time off task and absences

Claimant contends that the ALJ erred by failing to make findings regarding Plaintiff's time off task and absences. Pl.'s Mem. [DE-23] at 4–6. In particular, Claimant states that had the ALJ properly credited Claimant's testimony about his difficulty staying on task, supported by the medical evidence in the record, alongside the VE's testimony that employers would tolerate no more than nine percent off-task time and nine total missed days in a year, Claimant would have been found disabled. *Id.* Furthermore, Claimant states, the ALJ never reached an express conclusion regarding Claimant's ability to remain on task or on his absenteeism. *Id.* at 6.

On the other hand, Defendant argues that the ALJ's RFC properly accounts for Claimant's limitations, is supported by the record, and sufficiently demonstrates why the ALJ found Claimant's statements about motivation and inability to complete tasks inconsistent with other evidence. Def.'s Mem. [DE-26] at 5–12.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632,

5

636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (holding that "the lack of a rule requiring remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis" and finding that remand was appropriate when the claimant's ability to sit was a contested issue and the ALJ "barely mentioned [the claimant's] sitting problems in his decision").

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically

6

documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) ("The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . . pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'") (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)); *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, the ALJ first recounted Claimant's testimony from the May 4, 2021 administrative hearing relating to his mental health as follows. Claimant stated he is unable to work due to

7

symptoms and limitations caused by his impairments. He is unable to be around people, and his depression and anxiety are such that he is afraid to leave the house. Claimant got a service dog a year before the hearing. He has difficulty becoming motivated to do anything, so he has unfinished projects around the house. Claimant keeps a pretty clean house but does not clean up as often as he would like, and each task around the house becomes an anxiety burden. He bathes regularly, but has not taken good care of his teeth. He talks to an Army buddy and his son regularly, but he indicated his daughters do not approve of him or talk to him. He has thought about suicide two or three times the past three years. He began treatment for anxiety and depression in 1998, and none of the medications seemed to work, but marijuana does. He has had psychotic breaks while on his mental health medications, including a September 2018 hospitalization. His other mental health symptoms include daily memory problems, flashbacks, shakes, and night sweats. (R. 22).

The ALJ also summarized Claimant's testimony regarding physical impairments as follows. Claimant has back, neck, and right shoulder pain, which disturbs his sleep. He is able to wash dishes and cook and he pushes through the pain. He can stand for five minutes before experiencing pain and can walk 30 minutes before needing a five to ten minute break. His right shoulder pain ranges to "3-9/10" depending on the day, and he has about 10 good hours during which he can get things done, including household chores. *Id.*

Claimant testified at the hearing that regarding living on his own, paying bills, maintaining the house, and those sorts of activities, "with the depression, [] it's a reluctance. It's [sic] there's a lot of things that I wanna do. I start things and I can't finish them. [] It's very hard to get motivated to get up and do anything." (R. 46). Claimant stated he has slot cars as a hobby, but he "never can seem to get out there" and regarding housekeeping, "it'll go three to four days where I'll just leave stuff in the sink. [] it's [sic] I keep a pretty clean house but it—it's not as often as I

8

would like." *Id.* Later in the hearing, when questioned by his attorney, Claimant first stated that on an "average day" he had about twelve "good hours" to do household type chores, but Claimant then changed his answer to about ten hours on average. (R. 56–57).

In her finding that Claimant had a "moderate" limitation in concentrating, persisting, or maintaining pace, the ALJ noted Claimant's testimony that he had difficulty becoming motivated to do anything, so there are unfinished projects around the house. (R. 20). The ALJ stated that mental status exams found linear and goal-directed thought processes, and Claimant was fully-oriented with objective deficits noted in concentration and motivation. The ALJ also noted Claimant's testimony above, that on an average day he has "10 good hours" during which he can get things done. *Id.* (citing R. 413, 416, 420, 470).

The ALJ also discussed Claimant's treatment records. Mental impairment treatment was noted to be "routine," only with refills of Claimant's medications. (R. 23). His mood was reported in February 2018 as good, he was fully oriented, and appearance, behavior, and speech were normal, as was psychomotor activity and thought content. Thought processes were linear and goal directed, cognition was intact, insight and judgment were fair, and Claimant denied suicidal ideation. (R. 23, 420). April 2018 objective findings were "stable," with insight and judgment indicated as "fair" at one visit but "good" at another, and other objective signs remained normal. (R. 23, 413, 416). Claimant presented to a social worker in May 2018 with concern he would run out of his medications in a few days, as he had missed an appointment earlier in the month due to his own error and could not request a refill without seeing his psychiatrist. Claimant was given an appointment later in the month and was told he may need to go to the VA Emergency Room ("ER") before the appointment if he needed a refill. Claimant presented to the VA ER several days before the appointment, reporting that he ran out of his medication, Effexor, three days prior and that he

9

felt upset, his primary care provider "punished me by making me drive out here for my refill," and if he did not have Effexor for a week, he "becomes violent." However, the ALJ noted that other than being upset, Claimant was asymptomatic and had no other complaints, and a few days later he reported no physical or psychological emotional issues that were not being addressed and no suicidal ideation or hallucinations. (R. 23, 405, 407, 468).

Regarding absenteeism in particular, Claimant contends his psychotic breaks and hospitalizations, as well as several assaults committed by Claimant, illustrate his need for frequent absenteeism. Pl.'s Mem. [DE-23] at 5–8. The ALJ, however, also noted treatment records indicating that after the date of last insured, Claimant was hospitalized in September 2018 for two nights due to aggressive behavior and suicidal ideation with acute psychosis, and he was hospitalized in October 2018 for suicidal ideation, depressed mood, and feeling hopeless. (R. 23, 618–22, 804–05). Aside from these hospitalizations, the ALJ stated, however, medication management and therapy were continued as treatment since the date of last insured, and while marijuana helped Claimant's mood, sleep, and pain more than any prescribed medication, he did say that his medications were helping his depression, anxiety, and sleep, and that his depression was under control with his current medications. (R. 23, 944–70).

The ALJ concluded that "signs and symptoms during the period in question are [] inconsistent with hearing testimony." (R. 24). Aside from examinations indicating "fair insight and judgment," the ALJ continued, objective signs were generally unremarkable, and Claimant reported benefit from his treatment with medication refills alongside illegal marijuana use. *Id.* The ALJ stated that she found Claimant's testimony "internally inconsistent," because "[a]fter testifying about having no motivation and a plethora of mental symptoms, [Claimant] said that on an average day, he has about 10 good hours during which he is able to get things done, including

10

household chores, despite his physical and mental impairments." (R. 24–25).

Further, the ALJ stated the RFC accommodates for Claimant's mental limitations, assigning "light work," except "that he could perform simple and routine tasks and could maintain attention, concentration, and persistence to perform such tasks at a non-production pace, meaning no assembly line-type or quota-based work," Claimant "could occasionally interact with supervisors and coworkers, and could only have incidental contact with the public," and he "could adapt to infrequent changes in work routine." (R. 21, 25).

The ALJ's discussion of the evidence is sufficient for the court to conduct a meaningful review of the decision. Contrary to Claimant's assertion, the ALJ discussed Claimant's ability to stay on task and his motivation, specifically pointing to treatment records and to Claimant's testimony that he has about 10 good hours during which he is able to get things done, including household chores, despite his physical and mental impairments. (R. 24–25). The ALJ further discussed Claimant's hospitalizations, which Claimant pointed to regarding his absenteeism, and the ALJ stated that medication management and therapy were continued as treatment since the date of last insured, and medications were helping his depression, anxiety, and sleep, and that his depression was under control. (R. 23).

Claimant has cited no evidence the ALJ failed to consider, and it is not the court's role to re-weigh the evidence where, as here, the court can trace the ALJ's reasoning and it is supported by substantial evidence in the record. *See Britt v. Saul*, No. 7:18-CV-107-FL, 2019 WL 4855717, at *6 (E.D.N.C. Sept. 30, 2019) (finding failure to perform a function-by-function analysis did not frustrate meaningful review where, in formulating the RFC, the ALJ discussed the relevant evidence, explained how he accounted for plaintiff's limitations from her impairments, and cited substantial evidence in support of the RFC determination), *aff'd*, 860 F. App'x 256 (4th Cir. 2021);

11

*Whitted v. Berryhill*, No. 7:17-CV-124-FL, 2018 WL 4664124, at *4 (E.D.N.C. Sept. 28, 2018) (finding remand not required for further function-by-function analysis where the ALJ sufficiently discussed "the full range of evidence bearing upon plaintiff's upper extremity weakness, and the ALJ's determination is supported by substantial evidence."); *Beisler v. Kijakazi*, No. 7:20-CV-170-RJ, 2022 WL 673270, at *8 (E.D.N.C. Mar. 7, 2022) (finding meaningful review is not frustrated where the ALJ considered Claimant's testimony, his course of treatment, and the medical opinion evidence, and the court can trace the ALJ's reasoning, which is supported by the record).

Accordingly, the ALJ did not err regarding consideration of any off-task time and absences relating to Claimant's ability to stay on task or be motivated.

## B. The ALJ's Treatment of the VA Disability Rating

Claimant contends that the ALJ erred by failing to give substantial weight to Claimant's 70% disability rating from the VA, citing *Bird v. Comm'r of SSA*, 699 F.3d 337, 343 (4th Cir. 2012). Pl.'s Mem. [DE-23] at 7–8. On the other hand, Defendant argues that the ALJ appropriately explained her treatment of the Claimant's VA rating. Def.'s Mem. [DE-26] at 12–15.

In *Bird v. Commissioner of Social Security Administration*, the Fourth Circuit found that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d 337, 343 (4th Cir. 2012) (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

Subsequent to *Bird*, the SSA amended its regulations to provide for claims such as this one,

12

filed on or after March 27, 2017, that "[d]ecisions by other governmental agencies" are "inherently neither valuable nor persuasive" and the SSA "will not provide any analysis about how we considered such evidence in our determination or decision . . . ." 20 C.F.R. § 404.1520b(c)(1). The regulations further provide:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

*Id.* § 404.1504.

The Fourth Circuit recently held that *Bird's* holding regarding the weight assigned to VA disability ratings does not apply to claims filed after the new Social Security regulations took effect in March 2017. *Rogers v. Kijakazi*, 62 F.4th 872, 879–80 (4th Cir. 2023); *see Lyons v. Kijakazi*, No. 5:22-CV-91-D, 2023 WL 4784003, at *3 (E.D.N.C. July 7, 2023), *report and recommendation adopted*, 2023 WL 4768681 (E.D.N.C. July 26, 2023). Here, Claimant's claim was filed on May 3, 2018, and thus the new regulations apply and *Bird* does not.

The ALJ noted Claimant's 70% VA disability rating and found it to have "limited persuasiveness" because "[d]ecisions by other governmental agencies such as the Department of Veterans Affairs are based on rules for determining disability different from those used by the Social Security Administration," and "[t]hese types of evidence are inherently neither valuable nor

13

persuasive." (R. 23–24) (citing 20 C.F.R. 404.1504, 404.1520b(c)). Further, the ALJ considered Claimant's VA treatment records, and thus considered the supporting evidence underlying the VA's decision. (R. 23–24). Accordingly, the ALJ did not err in her treatment of Claimant's VA rating.

## VI. CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings [DE-25] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 26th day of September, 2023.

Robert B. Jones, Jr.
United States Magistrate Judge